IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHICAGO DANCE HISTORY PROJECT**<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>**JENAI CUTCHER**<br><br>　　　　　　　Defendant. | Case No. 1:23-cv-05595 |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Chicago Dance History Project ("CDHP" or "Plaintiff"), files this Complaint against Defendant Jenai Cutcher ("Cutcher" or "Defendant"). In support thereof, Plaintiff states as follows:

**INTRODUCTION**

1. CDHP is a small, nonprofit corporation endeavoring to preserve the history of the Chicago dance community. CDHP has worked to amass an archive of interviews, performance videos, photographs, and written materials from Chicago-based choreographers, dancers, documentarians, patrons, administrators, and collaborators. It has also built a digital archive of original and collected research documenting theatrical dance in Chicago.

2. Cutcher served as Executive and Artistic Director until her resignation in May 2023. Cutcher helped create and held sole and/or administrative authority for many of CDHP's business and social media accounts. She also had unfettered access to the digital archive and other historical materials.

3. Cutcher refused during the final month of her employment, while drawing a paycheck from CDHP, and thereafter, to return CDHP information and property in her possession

and take the necessary action to transfer control of CDHP accounts and property to CDHP, despite multiple requests by CDHP to do so. She has even been blocking CDHP access to accounts or deleting account profiles. Given her knowledge of CDHP's overall operations, her deletion of accounts, as well as improper possession of CDHP's confidential, privileged, and trade secret information, Cutcher is a continuing impediment and threat to CDHP.

4. Cutcher also has retained possession of a hard drive containing copies of CDHP's digital archives.

5. Cutcher failed to perform other transitional duties, despite her fiduciary duty to do so.

6. As a result of Cutcher's activities, CDHP has been unable to access many of their essential accounts, including, but certainly not limited to, QuickBooks (accounting), Salesforce (customer relationship management), AT&T (phone and internet), Google Photos (archived photos), PayPal (payments), MailChimp (marketing and email) and Instagram (social media).

7. Accordingly, CDHP has no choice but to file the instant action to prevent further harm by Cutcher and to seek compensation for harm already caused.

## **THE PARTIES**

8. Plaintiff Chicago Dance History Project is an Illinois not-for-profit corporation with its principal place of business in Chicago, Illinois. Plaintiff is a citizen of Illinois.

9. Defendant Cutcher is an adult individual who currently resides in and is a citizen of Ohio. Cutcher was the Executive Director of CDHP until May 31, 2023, when she voluntarily resigned.

**JURISDICTION AND VENUE**

10. This Court has federal subject matter jurisdiction over Count I, a claim under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq. ("DTSA"). *See* 28 U.S.C. § 1331. This Court further has supplemental jurisdiction over the other counts in this Complaint because they form part of the same case or controversy as the DTSA claim. *See* 28 U.S.C. § 1367.

11. This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because (1) CDHP seeks injunctive relief and recovery of damages, which together exceed the amount in controversy threshold of $75,000, exclusive of interest and costs, and (2) because this action is between citizens of a State (as defined in 28 U.S.C. § 1332) and a foreign state.

12. Under 28 U.S.C. § 1391(b)(2), venue is proper in the Northern District of Illinois because a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in this judicial district. *See also* 28 U.S.C. § 1391(b)(3).

**FACTUAL ALLEGATIONS**

13. Cutcher served as Executive and Artistic Director of CDHP from January 1, 2015, until her resignation on May 31, 2023.

14. Cutcher's duties included: coordination and contact for participants in research, services related to research; maintenance of project records and archives; direction and execution of oral interviews; discovery of potential partners and funding sources; public relations; advice in hiring appropriate adjunct personnel, budget and expenses, new practices and technologies in the conduct of research; and drafting monthly reports.

**Cuther Fails to Transition Vital CDHP Accounts and other Transitional Duties**

15. On May 1, 2023, Cutcher submitted her letter of resignation from CDHP, effective May 31, 2023.

16. On May 4, 2023, the Board of Directors met and set out the following nine action items to be completed by Cutcher prior to her resignation:

   (a) "Contact Jerome Robbins Dance Division of Audio and Moving Images Archive part of the NYPL to secure their interest in housing our archives and pursue actively, with Board approval."
   (b) "Talk to Kristy [Ann Rawson] about her interest in being our transition person, able to take over day-to-day operations on a transitional basis. She will be able to apply for permanent position once job description is defined."
   (c) "Inform Sean of your departure and discuss completing the remaining interviews that are to-date recorded but not yet edited."
   (d) "Contact the technical person you know about their interest in taking over the digitizing station and pop-up booth project."
   (e) "Contact DCASE to inquire if we can get a grant extension for the digitizing station and pop-up booth, if necessary."
   (f) "Send 2023 Approved Operating Budget to Board."
   (g) "Prepare list of projects we are committed to by grants already awarded, plus specify outstanding grant proposals."
   (h) "Prepare list of duties and tasks that will need completion and/or ongoing attention."
   (i) "Create full job description of all responsibilities and duties that are in your current job description."

17. Despite repeated assurances that she would take all necessary steps, Cutcher waited until the last day of her employment to meet with the designated CDHP employee, Kristy Ann Rawson and, ultimately, did not complete the transition of all accounts. Indeed, Cutcher only completed two of the nine enumerated tasks, namely (a) and (f).

18. The most important transitional task was, of course, the transition of control of accounts. This is so obviously obligatory that it was not discussed in detail on the list, but it is referenced in items (b) and (h). Cutcher failed to do this.

19. On May 31, 2023, the last day of her employment, Cutcher sent an email to the CDHP Board President, Patti Eylar, titled "CDHP update". In the email, Cutcher acknowledged that the transition of accounts had not been completed and stated that "[t]here are many things left that will require my involvement."

20. On June 1, 2023, the Board of Directors signed a resolution authorizing Kristy Ann Rawson, Operations Manager of the Chicago Dance History Project and the board Chair, Patti Eylar, to be official signatories and authorized agents, individually, on all documents, bank accounts, savings and loan accounts, investment accounts, payroll services, to include but not limited to Chase Bank, Gusto payroll service, Vimeo, and any other third party providing services necessary to conduct running the business of the Chicago Dance History Project.

**Cuther Continues to Fail to Transition Vital CDHP Accounts**

21. Following Cutcher's departure, CDHP was unable to conduct its day-to-day operations due to their inability to access vital business accounts.

22. Since Cutcher's departure CDHP has made multiple, repeated efforts to contact Cutcher and gain her cooperation. Between June and July 2023, many requests for cooperation were made to Cutcher by at least five individuals.

23. On June 6, 2023, Cutcher sent an email to the Board President, Patti Eylar, stating "In response to your texts… I will not continue to be available to CDHP until an employment agreement is in place. You can contract me for my time (a draft is attached) and Marc will dismiss me as an employee as of today if an agreement is reached."

24. The attached contract, titled "Agreement for Consultant Services" required a $100 per hour payment for her complete the transition of accounts.

25. CDHP was appropriately unwilling to sign such an agreement. Cutcher had a legal obligation to transfer control during the month of May 2023, prior to her departure, without any need for CDHP to sign a contract paying amounts above and beyond the salary paid to her in May 2023. Further, as Cutcher had previously promised to perform transitional duties yet failed to do so, there was no reason to expect that a contractual promise from her would lead to a different outcome.

26. Any subsequent attempts to gain Cutcher's cooperation were met with a similar response that a contract would be necessary for her cooperate.

27. On July 27, 2023, counsel for CDHP reached out to Cutcher via email requesting a conversation to discuss issues relating to her departure from CDHP.

28. On July 31, 2023, Cutcher responded, simply stating "Scheduling a conversation might be difficult. What would you like to discuss?"

29. On August 2, 2023, counsel for CDHP responded to Cutcher's email with a letter requesting (1) the full and immediate return of all CDHP information currently in her possession or under her control, including, but not limited to, log-in and password information for all CDHP websites, databases, and accounts; (2) the full and immediate transfer of administrative authority for all CDHP websites, databases, and accounts to a designated CDHP employee; (3) the full and immediate return of the hard drive containing the CDHP Digital Collections and any documents or communications related to grant applications; (4) that she sign a statement, verifying that she has not retained any copies of CDHP property; (5) that she cease and desist immediately from any other conduct that violates her continuing obligations to CDHP, including communications with the New York Public Library regarding the Jerome Robbins Archives; and (6) that she take any other steps reasonably needed to properly transition CDHP property to the control of CDHP

personnel and otherwise fulfill her fiduciary duties to CDHP. A true and correct copy of this letter is attached as Exhibit A.

30. To date, Cutcher has not done these things, nor has she agreed to do these things.

**Cutcher Retains Possession of CDHP's Digital Archives**

31. At the time of Cutcher's resignation, CDHP had been in discussions with the Jerome Robbins Dance Division of the New York Public Library ("NYPL") regarding the accession of CDHP's digital archives.

32. On May 23, 2023, Cutcher emailed the Assistant Curator of the Jerome Robbins Dance Division and noted that "[f]rom here, I will be your point of contact on all things archival, and Liz Liebman [former-President of the Board, who also resigned around the same time as Cutcher] and I will be managing the process with NYPL. Liz is a founding board member of CDHP and between us, we hold all the institutional knowledge and will make the decisions regarding the materials generated during our tenure." This email was sent three weeks after Cutcher's notice of resignation, just eight days prior to Cutcher's final date of employment, and only three days prior to Ms. Liebman's resignation on May 26, 2023.

33. On July 10, 2023, CDHP Board Member, Michael Anderson, wrote to NYPL notifying them that Cutcher had resigned as of May 31, 2023, and that Ms. Liebman had resigned as of May 26, 2023. Mr. Anderson reiterated CDHP's interest in the deaccession of the CDHP archives but noted that the new Board President would be NYPL's main point of contact until a new Executive Director is hired. Mr. Anderson also enclosed a resolution by the Board of Directors verifying that Cutcher is no longer authorized to conduct business on behalf of CDHP.

**Cutcher's Continued Interference with CDHP's Operations**

34. The August 2, 2023, letter listed thirty-four specific action items needed, as well as three requests that Cutcher cease and desist from additional inappropriate communications. The Letter requested that Cutcher promptly commit to doing so. Those thirty-seven items are:

| **CDHP Property, esp. Digital Collections and other intellectual property** | Immediately return all hard-drives associated with CDHP and/or are CDHP property. |
|---|---|
| **Google Photos Account** | Transfer administrative authority to Kristy Rawson, provide login information, and return all copies of photos stored on any personal devise. |
| **QuickBooks** | Transfer administrative authority to Cameron Heinze and provide login information. |
| **AT&T** | Transfer administrative authority to Cameron Heinze and provide login information. |
| **PayPal** | Transfer administrative authority to Cameron Heinze and provide login information. |
| **Instagram** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **MailChimp** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Vimeo** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Wix** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Chicagodancehistory.org** | Designate Kristy Rawson the "super-admin" on all accounts associated with chicagodancehistory.org and provide login information. |
| **SeeChicagoDance.com** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Chicagoartistsresource.org** | Transfer administrative authority to Kristy |

|  | Rawson and provide login information. |
|---|---|
| **Chicagodancehistory.org** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Trint** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Hootsuite** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Campsite** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **CitySpark** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Chicago star media** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Do312** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **NWI.com** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **yournews** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **YouTube** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Twitter** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Facebook** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Handshake** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Salesforce** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Hartford** | Transfer administrative authority to Kristy Rawson and provide login information. |

| | |
|---|---|
| **Horton Group** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **IACA** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **DCASE** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Driehaus** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **NEA** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **NEH** | Transfer administrative authority to Kristy Rawson and provide login information. |
| **Any other CDHP accounts not listed herein** | Provide list of any accounts not listed herein, transfer all administrative authority to Kristy Rawson, and provide all login information. |
| **Jerome Robbins Archive** | Cease and desist from any communications with the New York Public Library and immediately return any communications, documents and/or contract information. |
| **Grant Documents and Communications** | Cease and desist from any communications that could interfere with CDHP operations and immediately return all communications, grant applications, and reports, including all documents to or from consultants or potential consultants. |
| **Other Communications** | Cease and desist from any communications that state or imply that you continue to speak on behalf of CDHP. |

35. On As of the date of this filing, Cutcher has failed to take the actions necessary to complete these items and she has failed to commit to doing so.

## COUNT I
## BREACH OF FIDUCIARY DUTY

36. CDHP incorporates the allegations of Paragraphs 1 - 35, above, as if fully set forth herein.

37. As the Executive and Artistic Director of CDHP, Cutcher owed a fiduciary duty to CDHP, including the duties of loyalty and good faith.

38. Cutcher breached her fiduciary duty of loyalty to CDHP by taking the actions and inactions discussed above.

39. Cutcher breached her fiduciary duty by knowingly and intentionally acting adverse to CDHP's interests during and after her employment with CDHP by: (a) refusing to cooperate in the transition process; (b) refusing to provide login information and/or transfer administrative authority for vital CDHP accounts; (c) attempting to exclude CDHP from communications with the NYPL; and/or (d) continuing to disrupt CDHP operations by deleting accounts or denying CDHP access.

40. Because of the Cutcher's actions, CDHP has suffered, and will continue to suffer, damages and loss, in an amount to be determined at trial.

41. Cutcher's actions were intentional, willful, outrageous, and malicious, and justify the imposition of punitive damages.

42. CDHP has also suffered, and will continue to suffer, immediate and irreparable harm as a result of such breaches, and if Cutcher is not enjoined, CDHP will continue to suffer such injury. Injunctive relief is necessary as CDHP is without an adequate remedy at law to prevent this harm to CDHP.

## COUNT II
## CONVERSION

43. CDHP incorporates the allegations of Paragraphs 1 - 35, above, as if fully set forth herein.

44. CDHP has the absolute and unconditional right to its property and the immediate possession of such property.

45. Cutcher has retained CDHP property for her own use and/or in a manner inconsistent with CDHP's ownership of and rights in that property and with the intent to permanently deprive CDHP of that property and/or negatively or irreparably altering that property so as to devalue or diminish that property and/or its nature/status.

46. Cutcher, without the authorization of CDHP, wrongfully assumed control, dominion, and/or ownership over CDHP's property in a manner inconsistent with CDHP's ownership of and rights in that property.

47. CDHP has suffered actual damages as a result of Cutcher's acts of conversion.

48. CDHP has suffered and will continue to suffer irreparable harm as a direct result of Cutcher's acts of conversion.

49. Injunctive relief is necessary as the recovery of money damages alone would not fully compensate CDHP for Cutcher's acts of conversion.

50. Cutcher's conduct as alleged herein was willful and malicious and entitles CDHP to recover punitive damages.

## COUNT III
## FEDERAL DEFEND TRADE SECRETS ACT

51. CDHP incorporates the allegations of Paragraphs 1 – 35, above, as if fully set forth herein.

52. Cutcher's actions, as described above, constitute violations of one or more provisions of the DTSA.

53. The DTSA creates a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

54. The DTSA further provides that "a court may grant an injunction to prevent any actual or threatened misappropriation described in paragraph (1) on such terms as the court deems reasonable . . . ." 18 U.S.C. § 1836(b)(3)(A).

55. By engaging in the above conduct, Cutcher has misappropriated and/or threatens to misappropriate, CDHP's trade secrets related to a product or service used in, or intended for use in, interstate or foreign commerce.

56. CDHP is focused on Chicago's dance history, the historical and other information it shares is intended for and received by individuals and organizations outside Illinois, as illustrated by the communications with the New York Public Library.

57. During her employment with CDHP, Cutcher had access to and knowledge of CDHP's trade secret information, such as confidential account information, grant and funder information, and the digital archives. This information and other information discussed above constitutes "trade secrets" as that term is defined under the Defend Trade Secrets Act.

58. CDHP derives economic value from the fact that this information is not known to or available to others outside CDHP through legitimate means. Because of the value of this information, CDHP has undertaken reasonable measures to maintain its secrecy as set forth above, including, but not limited to, limiting the access to this information and requiring that such information be saved on password protected networks, devices, and servers.

59. Cutcher has misappropriated CDHP's trade secrets because, among other reasons, she retained the trade secrets while knowing or having reason to know that she was doing so by improper means when she has not returned such information to CDHP since resigning.

60. Without authorization, Cutcher misappropriated and threatens to misappropriate these trade secrets in a willful manner and with a deliberate intent to injure CDHP, among other things: (a) by acquiring, receiving, or possessing, and refusing to remediate such information; and (b) refusing to return the hard drive containing the digital archives.

61. Cutcher has a duty to maintain the confidentiality of the trade secrets she learned from CDHP and to limit the use of the trade secrets. Cutcher retained the trade secrets by improper means and has refused to return them to CDHP, thereby undercutting CDHP's operations and harming the organization's efforts.

62. As a consequence of the foregoing, CDHP has suffered and will continue to suffer irreparable harm, injury, and loss. Pursuant to the DTSA, actual or threatened misappropriation of trade secrets may be enjoined. Unless enjoined, Cutcher will continue to use CDHP's trade secret information to unfairly harm CDHP and CDHP will continue to suffer irreparable harm that cannot be fully remedied through monetary damages.

63. As a direct and proximate result of the conduct of Cutcher, CDHP is entitled to actual damages in an amount to be determined at trial. The acts and conduct of Cutcher were willful and malicious, justifying an award of exemplary damages and attorneys' fees.

## COUNT IV
## ILLINOIS TRADE SECRETS ACT

64. CDHP incorporates the allegations of Paragraphs 1 – 35 above, as if fully set forth herein.

65. Cutcher knows or has in her possession CDHP's confidential and trade secret information discussed above. Misappropriation of such information poses a significant threat to CDHP's ongoing business.

66. CDHP's confidential and trade secret information discussed above constitutes trade secrets because CDHP derives independent economic value from that information, such information is not known to or available to others outside CDHP through legitimate means, and the information is the subject of reasonable efforts to maintain its secrecy. Thus, CDHP's confidential and trade secret information described herein constitutes "trade secrets" within the meaning of the Illinois Trade Secrets Act, 765 ILCS § 1065 *et seq*.

67. Cutcher has misappropriated and, despite demand by CDHP, refused to return CDHP's confidential and trade secret information.

68. These actions by Cutcher are in violation of the Illinois Trade Secrets Act.

69. Unless restrained, Cutcher will continue to use CDHP's trade secret information to unfairly harm CDHP and CDHP will continue to suffer irreparable harm that cannot be fully remedied through monetary damages.

70. Cutcher's wrongful conduct will persist unless enjoined by this Court.

71. CDHP has suffered actual damages as a result of Cutcher's misappropriation of its confidential and trade secret information.

72. As a result of the misappropriation of CDHP's confidential and trade secret information, CDHP has been injured and faces irreparable injury. CDHP is threatened with losing its confidential and trade secret information and goodwill in amounts which may be extremely difficult, if not impossible, to fully determine.

73. As a direct and proximate result of the conduct of Cutcher, CDHP is entitled to actual damages in an amount to be determined at trial. The acts and conduct of Cutcher were willful and malicious, justifying an award of exemplary damages and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** CDHP requests the following relief against Cutcher:

74. Entry of temporary, preliminary and permanent injunctive relief requiring (1) the full and immediate return of all CDHP information currently in Cutcher's possession or under her control, including, but not limited to, log-in and password information for all CDHP websites, databases, and accounts; (2) the full and immediate transfer of administrative authority for all CDHP websites, databases, and accounts to a designated CDHP employee; (3) the full and immediate return of the hard drive containing the CDHP Digital Collections and any documents or communications related to grant applications; (4) that Cutcher sign a statement, verifying that she has not retained any copies of CDHP property; and (5) that Cutcher take any other steps reasonably needed to properly transition CDHP property to the control of CDHP personnel and otherwise fulfill her fiduciary duties to CDHP.

75. Entry of temporary, preliminary and permanent injunctive relief requiring Cutcher to take the actions listed in Paragraph 34, above;

76. Entry of temporary, preliminary and permanent injunctive relief prohibiting Cutcher from using or disclosing CDHP's trade secret information;

77. Entry of temporary, preliminary and permanent injunctive relief requiring Cutcher to identify any and all email accounts, computers, devices, hardware, and media on which she performed work for CDHP or on which she placed CDHP's information and to submit all such computers, devices, hardware, accounts, servers, domains, media, and any similar locations to a

third-party forensic firm for inspection and imaging and removal of any CDHP information or code;

78. Entry of judgment in favor of CDHP and against Cutcher for misappropriation of trade secrets, conversion, violation of the DTSA, violation of the ITSA, and breach of fiduciary duty;

79. An award of compensatory damages, disgorgements of all payments since May 1, 2023, double damages for willful misappropriation of trade secrets, punitive damages, costs, attorneys' fees, and any other relief as deemed to be warranted by this Court.

Dated: August 16, 2023

Respectfully submitted,

By: /s/ David K. Haase

David K. Haase, Esq.
Esther Choi, Esq.
**LITTLER MENDELSON P.C.**
321 North Clark Street
Suite 1100
Chicago, IL 60654
Direct (312) 795-3286
Fax (312) 372-7880
dhaase@littler.com
echoi@littler.com

4873-2801-8040.1 / 850000-3059